**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICK BRENDEN CONNOLLY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-720** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.      Introduction**

Plaintiff Patrick Brenden Connolly ("Connolly") brings this action pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying his applications for disability insurance benefits

("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social

Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The matter is presently before the

Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of

Civil Procedure 56.  ECF Nos. 10 & 12.  For the reasons that follow, the Commissioner's motion

for summary judgment (*ECF No. 12*) will be denied, and Connolly's motion for summary

judgment (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but

granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and

a remand for further proceedings.[1]  The decision of the Commissioner will be vacated, and the

case will be remanded to him for further consideration of Connolly's applications for DIB and

SSI benefits.

---

[1] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of
the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with
or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

II.     **Procedural History**

Connolly protectively applied for DIB and SSI benefits on May 7, 2010, alleging that he had become "disabled" on March 22, 2010.  R. 139, 141, 178.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on September 22, 2010.  R. 66, 72, 78, 84.  Connolly responded on October 20, 2010, by requesting an administrative hearing.  R. 90-91.  On August 15, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") William E. Kenworthy.  R. 12, 40.  Connolly, who was represented by counsel, appeared and testified at the hearing.  R. 43-56.  John Kuczynsky ("Kuczynsky"), an impartial vocational expert, also testified at the hearing.  R. 57-59.  In a decision dated August 18, 2011, the ALJ determined that Connolly was not "disabled" within the meaning of the Act.  R. 9-20.

On September 29, 2011, Connolly sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. 6-8.  The Appeals Council denied the request for review on April 12, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  R. 1.  Connolly commenced this action on May 31, 2012, seeking judicial review of the Commissioner's decision.  ECF No. 1.  Connolly and the Commissioner filed motions for summary judgment on October 29, 2012, and November 8, 2012, respectively.  ECF Nos. 10 & 12.  Those motions are the subject of this memorandum opinion.

III.    **Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994).  A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than

3

simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.    The ALJ's Decision

In his decision, the ALJ determined that Connolly had not engaged in substantial gainful activity subsequent to his alleged onset date.  R. 14.  Connolly was found to be suffering from bipolar disorder, an anxiety disorder, and a history of alcoholism (in early remission).  R. 14-15. These impairments were deemed to be "severe" under the Commissioner's regulations.  R. 14-15; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).  The ALJ concluded that Connolly's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15-16.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Connolly's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to performing tasks up to and including a mildly complex level, and further limited to tasks that would not involve dealing with the general public, working as a member of a team or meeting the demands of a rapid production pace or similar sources of high levels of work related stress.

R. 16-17.  Connolly had "past relevant work"[3] experience as an admissions record manager, an information technology systems manager, a receptionist, and a waiter.  R. 57-58.  Because those positions had entailed the supervision of others or contact with members of the general public, it was determined that Connolly could not return to his past relevant work.  R. 18.

Connolly was born on August 25, 1971, making him thirty-eight years old on his alleged onset date and thirty-nine years old on the date of the ALJ's decision.  R. at 18, 139, 141.  He was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He had a college education[4] and an ability to communicate in English. R. 18, 43.  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Connolly could work as a survey worker, surveillance system monitor or

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments."  *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).  The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] Connolly testified that he had received a bachelor's degree in liberal arts from Sarah Lawrence College.  R. 43.

production inspector.  R. 19.  Kuczynsky's testimony established that those jobs existed in the

national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[5]  R. 58-59.

## V.    Discussion

Prior to his alleged onset date, Connolly received treatment for alcohol dependence.  R.

324.  He was admitted to the Gateway Rehabilitation Center's "Partial Adult Program" on

November 16, 2005.  R. 324.  During the course of his treatment, Connelly participated in five

treatment sessions per week.  R. 324.  These sessions consisted of group therapy, individual

therapy, educational lectures and a family wellness program.  R. 324.  Connelly was discharged

on January 5, 2006.  R. 324.

In January 2006, Connolly sought treatment at the Persad Center in Pittsburgh,

Pennsylvania.  R. 321-322.  He was under the care of Dr. John Carter Brooks, a psychiatrist, and

Andi Pilecki ("Pilecki"), a clinical therapist.  R. 321-322.  Connolly continued to attend

treatment sessions at the Persad Center until January 24, 2007, when he was discharged.  R. 321.

After taking a year off from treatment, Connolly returned to the Persad Center on January 15,

2008, to resume his therapy sessions.  R. 321.  Since his return, Connolly's attendance at

treatment sessions has been "regular and consistent."  R. 321.  In a letter to the Bureau dated July

13, 2010, Dr. Brooks and Pilecki stated that Connolly's symptoms "seem[ed] to interfere with

[his] ability to maintain full-time employment and disrupt his ability to establish and maintain

relationships."  R. 321-322.

Connolly was employed by Chatham University ("Chatham") as an admissions records

manager during the three and a half years immediately preceding his alleged onset date.  R. 183.

---

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that,
considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can
perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d
203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v.
Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

He stopped working on March 22, 2010, due to bipolar disorder and alcoholism.  R. 45-46.

Disability payments were provided to him by Chatham's insurance carrier.  R. 44-45.  Since

Connolly was unable to return from medical leave, his employment at Chatham ended after the

2009/2010 school year.  R. 45.  In August 2010, Connelly started to work at Kohl's department

store for ten to fifteen hours per week.  R. 44.  He continued to work in that capacity through the

date of the ALJ's decision.  R. 17, 44.  Connelly's part-time work at Kohl's did not constitute

"substantial gainful activity" under the Commissioner's regulations.  20 C.F.R. §§ 404.1571-

404.1576, 416.971-416.976.

On September 10, 2010, Dr. Daniel C. Marston performed a consultative psychological

evaluation of Connolly in connection with his applications for DIB and SSI benefits.  R. 327-

335.  Based on the findings of his evaluation, Dr. Marston reported that Connolly had "marked"

limitations in his abilities to respond appropriately to work pressures in a usual work setting and

respond appropriately to changes in a routine work setting.  R. 334.  Connolly was deemed to be

"moderately" limited in his abilities to understand, remember and carry out detailed instructions,

make judgments concerning simple, work-related decisions, and interact appropriately with

supervisors, co-workers, and members of the general public.  R. 334.  Only "slight" limitations

were found in Connolly's abilities to understand, remember and carry out short, simple

instructions.  R. 334.

Dr. Ray M. Milke, a non-examining psychological consultant, opined on September 20,

2010, that Connolly was "able to meet the basic mental demands of competitive work on a

sustained basis despite the limitations resulting from his impairments."  R. 340.  Discussing

Connolly's work-related abilities and limitations, Dr. Milke explained:

> The claimant is incapable of understanding and remembering complex or detailed
> instructions; however, this would not significantly restrict his ability to function in

8

> a work setting.  He has difficulty working with or near other employees without
> being distracted by them as stress exacerbates his symptoms.  He has a history of
> impulsive behavior, but he can make simple decisions and is able to carry out
> very short and simple instructions.  Additionally, he would be able to maintain
> regular attendance and be punctual and would not require special supervision in
> order to sustain a work routine.

R. 339.  Connolly's subjective complaints were deemed by Dr. Milke to be only "partially

credible."  R. 339.

On June 24, 2011, Connolly entered an obsessive-compulsive disorder ("OCD")

Intensive Outpatient Program ("IOP") managed by the University of Pittsburgh Medical Center

("UPMC").[6]  R. 525.  His treating psychiatrist, Dr. David Yankura, provided him with

prescriptions for Zoloft, Geodon, Buspar, Lamictal, Trazodone and Vistaril.  R. 525.  Kalie

Pierce ("Pierce") served as Connolly's treating therapist.  R. 525.  In a "mental status

questionnaire" dated August 12, 2011, Dr. Yankura and Pierce stated that Connolly was "having

difficulty maintaining part-time employment," and that they did not believe that he was capable

of performing the duties of a full-time job.  R. 528.  They indicated that they did not know how

often Connolly would need to miss work if he were to secure full-time employment.  R. 528.

Kuczynsky testified that an individual who needed to miss more than four to seven days of work

per year would be "unemployable in the national labor market."[7]  R. 59.

The ALJ purported to give "[s]ubstantial weight" to the assessments supplied by Dr.

Marston and Dr. Milke.  R. 18.  He incorrectly stated that "no treating source" had found

Connolly to be "unable to perform any work."  R. 18.  Attributing the statement contained in the

"mental status questionnaire" solely to Pierce, the ALJ accorded it only "limited weight."  R. 18.

---

[6] The IOP was coordinated by the Western Psychiatric Institute and Clinic, which is affiliated with UPMC.  R. 15.

[7] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117].  *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

Connolly challenges the ALJ's decision on two distinct bases.  First, he contends that the ALJ's weighing of the opinion evidence did not properly account for the fact that Dr. Yankura had signed the "mental status questionnaire" of August 12, 2011.  ECF No. 11 at 8-11.  Second, he argues that the ALJ's residual functional capacity assessment failed to accommodate the functional limitations found by Dr. Marston.  *Id.* at 11-13.  These issues will be addressed in sequential order.

When the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [a claimant's] case record," the Commissioner will accord it "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.967(c)(2).  Even when an opinion provided by a treating source is not entitled to "controlling weight," it must still be considered for the purpose of determining whether the claimant's limitations would preclude the performance of substantial gainful activity.  *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008).  Where the record contains conflicting opinions submitted by different medical experts, the administrative law judge "is free to choose the medical opinion of one doctor over that of another."  *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009).  In such a situation, however, the administrative law judge must explain his or her reasons for crediting some evidence and discrediting other evidence.  *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).  This requirement is designed to facilitate the judicial review available to claimants under the Act.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000).

The ALJ was not bound by the opinion proffered by Dr. Yankura and Pierce.  *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).  Nonetheless, the ALJ was not free to base his rejection of that opinion on a mischaracterization of the evidence.  *Brownawell v. Astrue*, 554

F.3d 352, 357 (3d Cir. 2008).  The "mental status questionnaire" completed on August 12, 2011, was signed by both Dr. Yankura and Pierce.  R. 528.  By attributing the statements contained therein solely to Pierce, the ALJ disassociated Dr. Yankura from the statement declaring Connolly to be incapable of maintaining a full-time job.  R. 18, 528.  It was only on the basis of this mischaracterization that the ALJ was able to observe that "no treating source" had rendered an opinion supporting Connolly's allegation of statutory disability.  R. 18.  Given that Dr. Yankura's opinion of disability was neither acknowledged nor considered, the factual findings underpinning the ALJ's decision are not supported by substantial evidence.[8]  *Morales v. Apfel*, 225 F.3d 310, 318-320 (3d Cir. 2000).

Although the ALJ purported to give "[s]ubstantial weight" to Dr. Marston's examination findings, he did not fully incorporate those findings into his assessment of Connolly's residual functional capacity.  As discussed earlier, Dr. Marston found Connolly to be "markedly" limited in his abilities to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting.  R. 334.  The ALJ attempted to accommodate Connolly's need to avoid stressful work environments by "rul[ing] out jobs that would require a rapid production pace or similar sources of work stress."[9]  R. 58.  Nevertheless, he did not address Connolly's alleged difficulties in adapting to changes in a routine work setting.  R. 16-18.  A claimant's residual functional capacity must be assessed on a function-by-function basis.  *Santiago v. Barnhart*, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005).  The ALJ was not free to reject the limitation concerning Connolly's inability to respond appropriately to workplace changes without relying on countervailing medical evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d

---

[8] It is axiomatic that every medical report must be considered in relation to the evidentiary record as a whole.  *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304-307 (3d Cir. 1999).
[9] The quoted language comes directly from the ALJ's hypothetical question to Kuczynsky, which corresponded with the subsequent assessment of Connolly's residual functional capacity.  R. 16-17, 58.

Cir. 1993).  Since the ALJ's underlying residual functional capacity finding is not supported by

substantial evidence, Kuczynsky's testimony did not establish the existence of jobs in the

national economy consistent with Connolly's abilities and limitations.  *Rutherford v. Barnhart*,

399 F.3d 546, 554, n. 8 (3d Cir. 2005).

    For the foregoing reasons, the ALJ's decision cannot stand.  The only remaining question

is whether an immediate award of benefits is warranted, or whether the proper remedy is a

remand to the Commissioner for further consideration of Connolly's claims.  A judicially-

ordered award of benefits is justified only where "the evidentiary record has been fully

developed," and where "the evidence as a whole clearly points in favor of a finding that the

claimant is statutorily disabled."  *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).

Connolly cannot satisfy this standard on the basis of the existing record.

    Connolly testified that he was working part-time as a customer service employee at

Kohl's.  R. 49.  He stated that his interactions with customers had caused him to experience

depression, anxiety and paranoia.  R. 50.  The ALJ addressed those concerns by restricting

Connolly to full-time work that did not involve "dealing with the general public" or "working as

a member of a team."  R. 16-17.  Under the Commissioner's regulations, work activity that does

not constitute substantial gainful activity may be probative of a claimant's ability to maintain a

full-time job.  20 C.F.R. §§ 404.1571, 416.971.  Connolly's ability to perform part-time work

requiring the performance of tasks that would be precluded under the ALJ's residual functional

capacity assessment strongly counsels against an immediate award of benefits.

    Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA")

amended the Social Security Act to provide that "an individual shall not be considered to be

disabled" thereunder "if alcoholism or drug addiction" would be "a contributing factor material

to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, §
105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  The
Commissioner has promulgated regulations to implement the statutory mandate of the CWAAA.
20 C.F.R. §§ 404.1535, 416.935.  Under those regulations, the dispositive question is whether a
disabled claimant who actively consumes drugs or alcohol would remain disabled if he or she
were to stop consuming such substances.  20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).  If his or
her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to
an award of benefits.  20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  Conversely, if a
claimant's disability would cease in the absence of continuing substance abuse, a denial based on
"materiality" is justified.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

Since Connolly was not found to be "disabled" in the first place, the ALJ had no occasion
to consider the issue of "materiality." *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir.
2003)(explaining that the initial inquiry as to disability must be undertaken "without deductions
for the assumed effects of substance use disorders").  Nonetheless, Connolly testified that his
medical leave from Chatham had been partially attributable to "alcoholism."  R. 46.  He stated
that, around the time of his alleged onset date, he would typically drink one "big bottle of wine"
each night.  R. 46.  Connolly further acknowledged that he had experienced a "relapse" by
drinking alcohol on May 24, 2011.  R. 47.  Under these circumstances, an award of benefits at
this stage would not be justified even if Connolly could establish the existence of a "disability"
on the basis of the existing record.  Further proceedings would still be needed to determine the
extent to which his inability to work was due to continuing substance abuse.  Given that the
existence of an underlying "disability" is itself questionable in this case, it follows *a fortiori* that
a remand for further consideration of Connolly's claims is the proper remedy.

## VI.    Conclusion

Since the Commissioner's "final decision" denying Connolly's applications for DIB and SSI benefits is not "supported by substantial evidence," the Commissioner's motion for summary judgment (*ECF No. 12*) will be denied.  The motion for summary judgment filed by Connolly (*ECF No. 10*) will be denied to the extent that it requests an award of benefits[10] but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings.  The Commissioner's decision will be vacated, and the case will be remanded to him for further consideration of Connolly's applications for DIB and SSI benefits.  Connolly must be afforded "an opportunity to be heard" during the course of the upcoming administrative proceedings.  *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).  An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All counsel of record

---

[10] As noted above, because Connolly was not found to be "disabled," the ALJ had no occasion to consider the issue of "materiality."